### RUSSELL v. AMLOT.

(Supreme Court, Appellate Division, Third Department. May 5, 1909.)

1. MONEY LENT (§ 7*)—PRESUMPTIONS AND BURDEN OF PROOF.

A check is presumed to have been given to pay a debt, and not as a loan, and it is incumbent on the maker claiming that it was a loan to show that fact.

[Ed. Note.—For other cases, see Money Lent, Cent. Dig. § 11; Dec. Dig. § 7.*]

2. MONEY LENT (§ 7*)—ADMISSIBILITY OF EVIDENCE.

To overcome the presumption that a check was given to pay a debt, and not as a loan, it is proper to show the business relations between the parties.

[Ed. Note.—For other cases, see Money Lent, Dec. Dig. § 7.*]

3. MONEY LENT (§ 7*)—ADMISSIBILITY OF EVIDENCE.

In an action for money loaned a decedent, wherein the only issue was whether plaintiff advanced him at his request and on his promise to repay it the amount of plaintiff's check delivered and paid to him, it was conceded that plaintiff had recently acquired from him the money alleged to have been loaned, and it became material to determine in what capacity plaintiff held such money; and hence it was proper, as tending to overcome the presumption that the check was given to pay a debt, to show that he had willed to her his home farm, and that he subsequently sold it for the identical amount received from him, and which she claimed was given to her in place of the farm.

[Ed. Note.—For other cases, see Money Lent, Dec. Dig. § 7.*]

4. EVIDENCE (§ 236*)—ADMISSION BY DECEDENT.

In an action for money loaned a decedent, wherein it was conceded that plaintiff had recently acquired from him the money alleged to have been loaned after the sale of a farm for the identical amount, which money plaintiff claimed was given to her in place of the farm which he had willed to her, there was no error in receiving his admissions to the effect that plaintiff had taken good care of him, and that she would be well paid for her services; such admissions being relevant to the question of the ownership of the money.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 876–882; Dec. Dig. § 236.*]

5. EVIDENCE (§ 317*)—HEARSAY EVIDENCE.

In an action to recover money claimed to have been loaned a decedent by plaintiff, and which she had shortly before acquired from him by check, the testimony of a notary as to statements made to him concerning the check when decedent instructed him to prepare it was properly excluded as hearsay; the notary not having delivered the check to plaintiff nor communicated to her what decedent told him, but having simply prepared it pursuant to directions, and sent it to decedent, who signed it and personally delivered it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6.** EXECUTORS AND ADMINISTRATORS (§ 221*)—ACTIONS FOR MONEY LOANED DECEDENT—SUFFICIENCY OF EVIDENCE.

An action for money loaned a decedent must be maintained by clear and convincing evidence more cogent than will suffice to maintain a suit against the living.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1873; Dec. Dig. § 221.*]

Appeal from Trial Term, Franklin County.

Action by Elizabeth Murray Russell against John H. Amlot, as executor of William P. Amlot, deceased. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Affirmed.

The action was brought to recover $4,000 claimed by plaintiff that she loaned to the defendant's decedent May 21, 1906. The deceased was a widower, who owned considerable real estate, and was in poor health. He lived on a farm on the Canadian border. Plaintiff was his housekeeper.

A brief history of events in chronological order is as follows: In the fall of 1905, deceased, being then ill in bed, made a will known as the "Canadian will," wherein he devised to the plaintiff the home farm on which they were living with the personal property thereon. It was shown that he made statements to different persons to the effect that plaintiff had taken good care of him, and that she would be well paid for her services. In February, 1906, he sold some of his land and deposited $4,000 of the proceeds in a bank in Huntingdon, Canada. Plaintiff went to the bank and made the deposit for him in his name. March 1, 1906, one La Duke, a notary of Huntingdon who had drawn the will and who seems to have been doing more or less business for Amlot, was sent for, and was directed by him to draw a check for $4,000 to the order of plaintiff on the Canadian bank. He returned to his office at Huntingdon, a number of miles distant, drew the check there, and seems to have mailed it to him. Amlot signed the check and delivered it to plaintiff, who on March 5th appeared at La Duke's office with the check, and together they went to the bank, where plaintiff procured a Boston draft payable to her own order for the $4,000 then on deposit in Amlot's name. Some information or instructions seem to have been given by Amlot to La Duke concerning this check, which La Duke was not permitted to testify to at the trial against the objection of plaintiff. On March 14, 1906, after the above transaction, the home farm which Amlot had willed to plaintiff was sold for $4,000, $1,700 being paid down and a mortgage taken for the rest. On April 2d plaintiff deposited the Boston draft for $4,000 in the Malone bank to her own order, having held the draft for about a month, opening a new account for that purpose, and she also on the same day deposited to the credit of Amlot's account in the same bank the $1,700 paid on the home farm. Amlot at that time had an account in that bank, but it seems to have been entirely balanced. Thus matters stood until May 21, 1906, when plaintiff gave to Amlot her check on the Malone bank for $4,000. That is claimed to be the loan in question. Her check was on the following day deposited to Amlot's credit in the Malone bank. Shortly thereafter both went to Saratoga, where they remained some time, and Amlot deposited in the Saratoga Trust Company in his own name $5,700 drawn from the Malone bank, being the amount of plaintiff's check of $4,000 and the $1,700 paid on the home farm. In the fall of 1906 plaintiff returned to Franklin county, living in the village of Ft. Covington; plaintiff keeping house for him as before. He seems to have been in expectancy of death and desirous of adjusting his affairs. In November he procured a piece of real estate to be purchased for $575 and placed in plaintiff's name. In December he deeded to her a tract of 13 acres of land adjoining. There is a dispute as to who furnished the consideration for the first parcel, but plaintiff makes no claim that she paid for the second. If she did pay for the first, she has not shown where the money came from, and it is claimed by defendant that it came from Amlot.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff gave evidence of a number of admissions made by the deceased to the effect that he had borrowed money of her. Most of these admissions were proved by her relatives. It does not appear for what purpose Amlot received the loan if such it was. He evidently did not need to use the money because it was deposited in the Saratoga Trust Company to draw interest. In April of the following year more than the $4,000 was returned to the Malone bank to his credit. The trial justice set aside the verdict of the jury in plaintiff's favor, and the latter appeals.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

R. W. Berry, for appellant.
John P. Kellas and Earl W. Scripter, for respondent.

COCHRANE, J. Several rulings at the trial are claimed by the respondent to have been erroneous, and are relied on by him to sustain the order granting a new trial.

First. The court received in evidence the contents of the so-called "Canadian will," wherein the deceased devised to the plaintiff the farm on which he was living, with the personal property thereon. This will seems to have been subsequently superseded by another will, but it was in existence and was not shown to have been revoked by subsequent will or otherwise at the time when plaintiff received the $4,000 from the deceased. It is true the only issue under the complaint was whether on May 21, 1906, plaintiff advanced $4,000 to Amlot at his request and on his promise to repay the same; but it was incumbent on plaintiff to show that her check to Amlot was not in payment of an antecedent indebtedness by her to him. The presumption was that this check was given to pay a debt, and not as a loan. Kilmer v. Quackenbush, 125 App. Div. 352, 109 N. Y. Supp. 444; Poucher v. Scott, 33 Hun, 223, affirmed 98 N. Y. 422; Grafing v. Heilmann, 1 App. Div. 260, 37 N. Y. Supp. 253; Koehler v. Adler, 78 N. Y. 287, 290. It was therefore proper as tending to overcome this presumption to show the business relations between the parties and the transactions which had just taken place to establish that plaintiff was not indebted to Amlot. It was conceded that plaintiff had recently acquired from Amlot the money constituting the subject of the alleged loan. It therefore became very material to determine in what capacity she held such money. It was a fact that Amlot had willed to her the home farm, and that he subsequently sold this farm for the identical amount she received from him. She claims that the money was given to her in the place of the farm. It is true that the sale of the farm was not actually consummated by the execution and delivery of the deed until shortly after he gave her his check, and she had exchanged the same for the Boston draft, but it was consummated before she deposited the draft and received the avails thereof to her own credit. We cannot say what passed between them in the meantime, but plaintiff was clearly entitled to whatever inferences the jury might see fit to draw from the existence of this will and the sale of the property therein proposed to be devised to her as bearing on the question whether plaintiff had made a loan to Amlot, or whether she had merely discharged an obligation, as the law would presume in the absence of any evidence

to the contrary. The contents of the will tended to show that Amlot had vested plaintiff with title to money equivalent to the farm he had willed her and subsequently sold, and that she held such money in her own right and was not indebted to him therefor.

Second. It is claimed that the court erroneously received admissions of Amlot to the effect that plaintiff had taken good care of him, and that she would be well paid for her services. These admissions, like the will, were relevant to the question of the ownership of the money which constituted the alleged loan. They were made about the time that plaintiff received the money, and tended to throw light on the mental attitude and disposition of the deceased toward plaintiff. Moreover, if the will was properly received in evidence, these admissions or statements, if technically inadmissible, were harmless, inasmuch as they were merely expressive of that which by the will became an accomplished fact.

Third. The court properly excluded testimony of La Duke as to the statements which Amlot made to him concerning the $4,000 check to plaintiff's order at the time when he instructed La Duke to prepare such check. La Duke did not deliver the check to plaintiff nor communicate to her what Amlot had told him. La Duke simply prepared this check in his own office pursuant to Amlot's previous directions, sent it to Amlot, who signed it, and who personally delivered it to plaintiff. The conversations between Amlot and La Duke were not brought to the knowledge of plaintiff, and were clearly hearsay. Whatever talk may have passed between Amlot and his attorney or agent would throw no light on what subsequently passed between Amlot and the plaintiff.

The trial justice, however, set the verdict aside as against the weight of evidence, and with this exercise of discretion on his part we are not inclined to interfere. It is settled that an action of this kind must be maintained by evidence which is clear and convincing and more cogent than such as will suffice to maintain an action against the living. The trial justice had the witnesses before him, and had at his disposal better means than an appellate court in determining in what manner the discretion of the court should be exercised on a motion for a new trial. The case on the facts is not so convincing in favor of plaintiff as to enable us to say that the verdict of the jury was not against the weight of evidence.

The order should be affirmed, with costs. All concur.