Joseph A. Cox, S.
The issue in this proceeding for the settlement of the account of the administrators is created by their rejection of the claim of George S. Badders upon an alleged promissory note in the amount of $100,000. The paper purported to be a promissory note reads as follows:
“ $100,000.00 February 26, 1953
For good and valuable consideration, the receipt whereof is hereby acknowledged, on demand after date I promise to pay to George S. Badders, or to Ms order, or to his heirs, the sum of One Hundred Thousand Dollars ($100,000.00) with interest at the rate of two percent per annum.
Payable at the Brooklyn Dime Savings Bank, corner of Fulton and DeKalb Avenue, Brooklyn, New York. Due on demand.
Janet Phillips ”
The administrators concede that the words Janet Phillips are the autograph of the decedent but they assert not only that there was no valuable or legal consideration for the instr ament but that it is a forgery. The estate representatives claim that a paper, blank except for the autograph of the decedent, was cut to the size of the alleged promissory note and the entire text appearing above the decedent’s autograph was inserted by the objectant Badders.
The position of the objectant is that he read in the newspapers of litigation between the decedent and one Wells; that, because the objectant had been swindled by a man named Wells, the objectant made himself acquainted with the decedent sometime between 1950 and 1952; that thereafter he accompanied the decedent to motion picture theatres, to dinner, and to church, and that such acts of Mndness constituted the consideration for the note. The claimant who created the excuse to introduce himself to the decedent, purportedly for the purpose of protecting this elderly woman from persons with evil designs, was, by his own admission, a person with a long criminal record. Against this background he claims to have prepared the note and to have procured the decedent’s signature upon it in consideration of Ms gentlemanly conduct.
On the date of the alleged note the decedent was 86 years of age. Approximately two years later she was declared incom *404 petent and a committee of her property was appointed. She died in November, 1955 at the age of 89, some six months following her commitment as an incompetent. The alleged note was payable by its terms, on demand, at the Brooklyn Dime Savings Bank, an institution where neither the decedent nor the claimant had a bank account. The paper allegedly was held in the possession of the claimant from its” date, February 26, 1953, but demand for payment never was made of the decedent or of her committee and demand first was made after the appointment of the administrators.
Any claim against an estate is required to be established by evidence more cogent than that which will support an action against a living defendant and this claim which the objectant allowed to remain dormant during the lifetime of the decedent, including a period during which a committee handled her affairs, must be established by convincing proof which the court is required to scrutinize with the utmost care. (Lyon v. Smith, 142 App. Div. 186; Matter of Block, 258 App. Div. 342, 346; Ward v. New York Life Ins. Co., 225 N. Y. 314; Matter of McMillan, 218 N. Y. 64; Russell v. Amlot, 132 App. Div. 584.) If the alleged promissory note was in fact an instrument executed knowingly by the decedent, the claimant’s failure to activate it during the decedent’s lifetime is strong indication either that he questioned the instrument’s validity or regarded it as a testamentary disposition. The paper lacks the formalities of execution requisite to the latter status. (Decedent Estate Law, § 21; Matter of Brooks, 195 Misc. 175.)
The recital of consideration in a negotiable instrument creates an inference of the existence of consideration and prima facie evidence of the fact of consideration but any such inference is here rebutted by the evidence of the alleged circumstances under which the paper was obtained. Inasmuch as the claimant undertook to prove consideration, the sufficiency of the evidence so offered is the test of the adequacy of consideration and a deficiency in the proof is not to be provided by inference or presumption. (Dougherty v. Salt, 227 N. Y. 200; Severance v. Severance, 269 N. Y. 523; Matter of Tierney, 44 N. Y. S. 2d 375, 378, affd. 268 App. Div. 913.) The claimed consideration, consisted of voluntary acts of kindness, unsolicited by the decedent and performed by the objectant without expectancy of compensation upon either a contractual or quantum meruit basis. It is beyond dispute that the objectant lacked either talent or training to render services compensable in the amount stated in the alleged note although it is equally beyond doub t that his undisclosed purpose in associating with *405 the decedent was to benefit himself. The court does not accept as credible the testimony of a witness who testified on the objectant’s behalf as to the delivery of the note to the objectant, but if such testimony were believed it would prove nothing more than delivery. Mere friendly acts do not constitute consideration and the defense that the purported note was without consideration is sustained. (Blanshan v. Russell, 32 App. Div. 103, affd. 161 N. Y. 629; Matter of Green, 247 App. Div. 540, 543.)
The paper upon which the claim is based measures 9 inches by 3{-¡j inches. It is conceded that this paper was cut out of a larger sheet of ordinary typewriter paper measuring 11 inches by 8y2 inches and it is further conceded that the autograph of the decedent was on such larger sheet before such deduction in size. It is not disputed that the autograph ran lengthwise on the typewriter paper and not across the width of the paper and that the purported note in its present form was cut by the objectant from the typewriter paper in a manner that retained a portion of only one edge of the original paper, the edge now constituting the right side of the purported note. It also is an accepted fact that the typing on the paper was done on a typewriter owned by the objectant. The administrators assert that the cutting of the paper was done by the objectant when the full size sheet of paper bore only the autograph of the decedent and that he imposed the typewritten text above the autograph. In support of this the administrators point to the decedent’s habit of placing her signature in close proximity to the concluding words of writings which she signed and the variance from this practice in the alleged note Avhere the signature appears at some distance below the typewritten matter. They further contend that it was decedent’s custom to use her middle initial in signing all formal documents and not merely her bank checks which, of course, required a prescribed signature. These facts, particularly the most unusual way in which the alleged note was cut from a larger sheet of paper, cast grave suspicion upon the validity of the alleged note. The administrators contend that since the cutting was done before the text of the alleged note was typed, this accounts for the space between the text and the signature as well as for the fact that the signature is at the extreme lower edge of the cut paper, a most awkward and unnatural place for a person to sign a paper. The objectant insists that the cutting was done by him after the note had been typed and later signed by the decedent and that the reduction in size was accomplished for ease of handling. A folding of the paper would have accomplished ease of handling and it is more believable that the cutting, whenever done, was *406 to make the instrument resemble in appearance the familiar form of printed note. Why the paper as presented for payment should have been cut from the inner part of the larger sheet so that only a few inches of the right-hand edge of such larger sheet were retained is unexplained. Conjecture can be resorted to but there comes to mind no legitimate reason why a $100,000 note would be executed in this fantastic manner. The autograph of the decedent evidences that her pen failed when she started to write the first letter of her name and that such letter was written over. Again surmise could suggest that the entire autograph was not intended as a signature but rather as a test of the writing instrument. The whole thing reeks of chicanery and fraud but on the evidence presented the court cannot conclude that the decedent did not sign the paper when typewritten matter was upon it and that a forgery was committed in the manner contended for by the administrators.
However, the suspicion aroused by the claim on this most unusual instrument cannot be put to one side as inconsequential. The peculiar character of the alleged note; its amount; the advanced age of the decedent; her obvious weakening mentality which eventuated in a determination of her incompetency; the fact that the objectant, a complete stranger, contrived to establish a relationship with her after reading in the press of her prior financial difficulties; the criminal history of the objectant ; the fact that in quite similar circumstances he had made claim on a promissory note, in almost identical text, against the estate of another woman decedent and the conceded facts that the instrument here in question was typed by him on his typewriter and that such machine had been used to type other papers signed by the decedent all constitute elements which show a deliberate plan to establish a confidential relationship.
The confidential relationship between the claimant and this aging woman who resided alone in a hotel room and received most infrequent visits from her relatives created a clear opportunity for the perpetration of a fraud but, of course, a conclusion of fraud cannot be reached without basis. It is largely because of the difficulty of proof in such a situation that a doctrine peculiarly applicable to this type of relationship has found its place in the law and is stated in Cowee v. Cornell (75 N. Y. 91, 99-100) in the following language: “ It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render *407 it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled.”
The doctrine so expressed has been applied in many cases (Matter of Smith, 95 N. Y. 516; Barnard v. Gantz, 140 N. Y. 249; Matter of Ruef, 180 App. Div. 203, affd. 223 N. Y. 582) and a most appropriate quotation is found in Allen v. La Vaud (213 N. Y. 322, 325-326) wherein it was said:
“ On these facts the question is presented to us whether a court by its findings should give validity to a conveyance executed under such rather sinister conditions unrelieved by any word of explanation or evidence of honesty and fair dealing on the part of the person benefited. The question suggests the answer.
“It is familiar law that certain classes of contracts are inherently subjects of suspicion and scrutiny, and when the assailant of a conveyance has established its character as included within one of these classes he has made a prima facie case and cast upon the grantee the burden of showing that it was the product of a fair and honest transaction free from any undue influence.”
The conclusion reached is that the objectant has not met the burden imposed upon one in his position to establish the transaction to be a legitimate one and that, irrespective of the confidential relationship, the alleged note fails for lack of consideration. The objection to the account is dismissed.
Submit decree on notice.