HENRY B. CALDWELL, as Administrator de Bonis Non with the Will Annexed of ANNIE B. FRISBIE, Deceased, Appellant, *v.* ROBERT L. LUCAS et al., as Executors of JOHN W. HUNT, Deceased, Respondents.

Appeal — when order of Appellate Division reversed a judgment rendered upon the report of a referee and there is no particular question of fact stated in order of reversal or the judgment appealed from, the Court of Appeals must conclude the reversal was upon the law only — action for services rendered to testator during his lifetime — when testimony of plaintiff sufficiently corroborated by evidence of other witnesses to sustain judgment for plaintiff.

1. Where an order of the Appellate Division reversing a judgment upon the report of a referee reads " ordered and adjudged that the findings be reversed * * * and the complaint dismissed," and

there is no particular question of fact stated in the order of reversal or the judgment appealed from, this court is bound to conclude that the reversal was upon the law only (Code Civ. Pro. § 1338) and the sole question to be reviewed is, therefore, whether or not there is any evidence to sustain the referee's findings.

2. Where in an action brought against the executors of a decedent to recover a sum alleged to have been promised by defendants' testator to plaintiff in payment of services rendered by her, there was testimony that in 1889 defendants' testator, then a widower, asked plaintiff and her husband to come and live with him so that plaintiff could take care of his home and run it for him, for which she was to be well paid, and plaintiff did so until the defendants' testator remarried and went to Europe, and thereafter during his absence, for eight or nine years, plaintiff looked after his affairs and property as requested by him and subsequently, upon his return home, defendants' testator promised in the presence of her husband to pay plaintiff a designated sum for her. services and also stated to another witness, a son of plaintiff, that he had promised her said sum, it must be held that there was evidence sustaining the plaintiff's claim and that in view of all the circumstances it presented a question of fact to be disposed of by a jury, judge or referee and that her claim could not be dismissed upon any theory that there was a different rule for this class of cases than for others.

3. It was for the Appellate Division to review this evidence and to reverse on the evidence if that court thought it insufficient to make out a case. In view, however, of the plaintiff's *prima facie* case it could not reverse upon the law, that is, reverse because there was no evidence to sustain the claim and dismiss the complaint. As this is what the Appellate Division did do, its judgment must be reversed and the finding of the referee be reinstated.

*Frisbie* v. *Lucas*, 192 App. Div. 583, modified.

(Submitted March 15, 1922; decided April 18, 1922.)

APPEAL from a judgment entered September 1, 1920, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a decision of an official referee and directing a dismissal of the complaint.

*Frank Parker Ufford* for appellant. The evidence, all of which is uncontradicted, is ample to sustain the findings. (*Simons* v. *Cromwell*, 262 Fed. Rep. 680;

*Cannon* v. *Sares,* 177 App. Div. 588; *Lerche* v. *Brasher,* 104 N. Y. 157; *Matter of Merchant,* 6 N. Y. Supp. 675; *Whitman* v. *Foley,* 125 N. Y. 651; *Griggs* v. *Renault Selling Branch,* 179 App. Div. 845.)

*John Nicholson* for respondents. Hunt made no .contractual promise. At most, his alleged statements were mere expressions of benevolent intent. (*Hamlin* v. *Stevens,* 177 N. Y. 39.) In cases of this kind the testimony must be not only clear and convincing, but of the clearest and most convincing character, and corroborated in all substantial particulars by disinterested witnesses. (*Hamlin* v. *Stevens,* 177 N. Y. 39; *Winston* v. *Winston,* 165 N. Y. 553; *Winnie* v. *Winnie,* 166 N. Y. 263; 174 N. Y. 53; *Mahany* v. *Carr,* 175 N. Y. 454; *Ide* v. *Brown,* 178 N. Y. 28; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Holt* v. *Tuite,* 188 N. Y. 17; *Toussey* v. *Hastings,* 194 N. Y. 79; *McKeon* v. *Van Slyck,* 223 N. Y. 392; *Ward* v. *N. Y. L. J. Co.,* 225 N. Y. 314; *Matter of Sherman,* 227 N. Y. 350; *Schen* v. *Blum,* 119 App. Div. 827; *Butcher* v. *Geissenhiemer,* 125 App. Div. 272; *White* v. *Devendorf,* 127 App. Div. 791; *Dueser* v. *Meyer,* 129 App. Div. 598.) The application of section 1338 of the Code of Civil Procedure, is an instrument in the hands of this court to conserve justice, and will not be permitted, as a mere technicality, to thwart justice. (*Levy* v. *Louvre Realty Co.,* 222 N. Y. 14; *Town of Queensbury* v. *Hudson Valley Ry. Co.,* 218 N. Y. 648; *Livingston* v. *City of Albany,* 161 N. Y. 602; *Beatty* v. *Guggenheim Ex. Co.,* 223 N. Y. 294.)

CRANE, J. In the year 1899 John W. Hunt was a resident of the city of Washington. He had just been divorced from his wife and was living at Twentieth street near Dupont Circle. His household consisted of the servants and his niece, eighteen years of age.

For many years Dr. William R. Frisbie and his wife, Annie B. Frisbie, had been friends of Mr. Hunt. and he

1922.]    Opinion, per CRANE, J.    [233 N. Y. 248]

proposed to them that they come and live with him, so that Mrs. Frisbie could take care of his home and run it for him. For this she was to be well paid.

Dr. Frisbie and his wife were well advanced in years and Mrs. Frisbie had had such experience in managing her household as to make her extremely helpful and useful to Mr. Hunt. Dr. Frisbie, after first rejecting the proposition, at last consented, and for three months Mrs. Frisbie took care of Mr. Hunt and his home in Washington and thereafter for a whole year in Plainfield, New Jersey, doing everything that a good housekeeper would do to maintain and run a large establishment given over to much entertaining.

In 1900 Mr. Hunt remarried and from that time until 1909 he had and his wife traveled extensively in this country and in Europe.

During all of these years Mrs. Frisbie continued her services in looking after Mr. Hunt's affairs and property as requested by him.

For eight or nine years Mrs. Frisbie had charge of Hunt's house, going over as often as once a week, taking care of things that were stored in the stable and procuring articles at the request of the Hunts to be sent to them abroad.

Dr. Frisbie testified: " Q. While the Hunts were absent from the city at the time they had the N Street House, how frequently did Mrs. Frisbie go over to your knowledge? A. She went there very frequently, quite frequently. Between 1900 and 1909 I knew of many services she rendered. * * * She had the general oversight of the domestic matters, so far as they were located in Washington. He had things on store there — in storage there — and a house there she had charge of, had the keys of, employed a man sometimes to guard the house. She attended to various matters that she had been requested to look out for by Mr. Hunt — forwarded things to them, got them from the house or

from the store-room. He had a stable on Wyoming Avenue where furniture, trunks and various things were stored. She had the keys to this stable."

Mrs. Frisbie in her own behalf testified that after Mr. Hunt was married in 1900 she looked after the storage of his goods, put his home in order and looked after the property while he was away; that she went to the house very frequently and saw that everything was all right and generally had a man sleeping there at night, to look after the heat and keep the pipes from freezing. The following is a bit of her testimony: " Q. How frequently were you at the house during this period? A. During the different periods I went there easily once a week, sometimes twice a week, just depended on the weather. I had the key to the stable and could go there whenever I thought it necessary to look after things."

According to this outline it appears that Mrs. Frisbie at the request of Mr. Hunt came into his home in 1899, and for a year and a half ran his home and thereafter while he was abroad down to 1909, looked after his affairs in Washington and took charge of his property and belongings.

In 1909 while on a visit to Washington Mr. Hunt in the presence of Dr. Frisbie promised to pay Mrs. Frisbie for her services $10,000. He stated to another witness, Henry D. Caldwell, a son of Mrs. Frisbie by a prior marriage, that he had promised her $10,000.

Hunt died in December of 1910 leaving a last will and testament without having provided for Mrs. Frisbie or having paid her any money for her services.

This action was brought against his estate to recover the sum promised. The case was referred to the official referee, Judge Henry A. Gildersleeve, who found all the facts in the plaintiff's favor, including two minor claims on the second and third causes of action, one for $600 and another for $90.

On the first cause of action the amount claimed and

awarded was $10,000 with interest from February 1, 1909. On appeal the judgment entered upon the referee's report was unanimously reversed and the complaint dismissed. The order of reversal reads: " Ordered and adjudged that the findings be reversed with costs and the complaint dismissed with costs."

Under section 1338 of the Code of Civil Procedure, this means that there has been a reversal upon the law and not upon the facts or any particular fact. As frequently stated this provision of the Code reads: " Upon an appeal to the Court of Appeals from a judgment, reversing a judgment upon the report of a referee, * * * it must be conclusively presumed that the judgment was not reversed, or the new trial granted, upon a question of fact, unless the particular question or questions of fact upon which the reversal was made or the new trial was granted are specified and referred to by number or other adequate designation in the body of the judgment or order appealed from."

There is no particular question of fact stated in the order of reversal or the judgment appealed from, and we, therefore, are bound to conclude that the reversal was upon the law only. We cannot look to the opinion to aid in this matter.

The sole question for us to review is whether or not there is any evidence to sustain the referee's findings. If there be no evidence whatever the Appellate Division was right in reversing and dismissing the complaint as a matter of law. If there be any evidence sustaining the plaintiff's claim the Appellate Division could have reversed upon the facts or the sufficiency of the evidence, but should not have dismissed the complaint.

The brief outline of the testimony which I have given at the opening of this opinion is sufficient to show that there was evidence sustaining the plaintiff's claim for $10,000 against the estate of Mr. Hunt, and that in view of all the circumstances it presented a question of fact

to be disposed of by a jury, judge, or referee and that her claim could not be dismissed upon any theory that there was a different rule for this class of cases than for others.

The plaintiff was only required to make out a case by a fair preponderance of the evidence, and as we said in *McKeon* v. *Van Slyck* (223 N. Y. 392) and *Ward* v. *N. Y. Life Ins. Co.* (225 N. Y. 314) the law does not specify of what the evidence shall consist, to make out a fair preponderance. As in every other case it is for the triers of facts to take into consideration all the circumstances such as the nature of the claim, tardiness in its presentation, the death of the man against whose estate the claim was presented, etc., in arriving at a conclusion.

The plaintiff made out a *prima facie* case by the testimony above referred to. It was for the official referee to pass upon the testimony and determine the facts, decide whether the plaintiff had proved her case by a fair preponderance of evidence. It was for the Appellate Division to review this evidence and to reverse on the evidence if that court thought it insufficient to make out a case. In view, however, of the plaintiff's *prima facie* case it could not reverse upon the law, that is reverse because there was no evidence to sustain the claim and dismiss the complaint. As this is what the Appellate Division did do, we must reverse that part of its judgment and reinstate the finding of the referee as to the first cause of action.

We agree with the Appellate Division as to the second and third causes of action and affirm its judgment reversing the finding of the referee upon the second and third causes of action.

The judgment of the Appellate Division should, therefore, be modified by reversing the dismissal of the first cause of action and affirming the judgment entered upon the report of the referee as to the $10,000 claim with interest, and affirming the disposition of the Appel-

late Division as to the second and third causes of action, with costs to appellant in this court and Appellate Division.

HISCOCK, Ch. J., HOGAN, POUND and ANDREWS, JJ., concur; CARDOZO and McLAUGHLIN, JJ., vote to affirm judgment of Appellate Division on ground that the first cause of action is barred by the Statute of Limitations.

Judgment accordingly.