In the Matter of the Judicial Settlement of the Accounts of H. A. CLARK, as Executor of the Will of REBECCA C. WOOD, Deceased.

CASSIUS M. CASE, as Administrator, etc., of HELEN C. CASE, Deceased, Appellant; RALPH H. SMITH and Others, Respondents.

Fourth Department, November 14, 1923.

Executors and administrators — claim for services rendered by claimant's intestate for testatrix — claimant's intestate was educated by testatrix — later in life she returned to home of testatrix and cared for her — testatrix devised trust fund and household goods to claimant's intestate and provided that principal of fund should be paid to claimant's intestate when she reached age of forty years — claimant's intestate was killed at age of thirty-six, shortly after testatrix died — contract for payment shown by evidence — error to reject claim on ground that work by claimant's intestate was to compensate testatrix for her education — note given by claimant's intestate to testatrix for small sum of borrowed money not inconsistent with claim — provision in will was not payment.

A contract by the testatrix to pay the claimant's intestate for services rendered in taking care of the testatrix from 1912 to 1920 is shown by the evidence, since it appears that claimant's intestate when she was fourteen years of age went to live with the testatrix and her sister and was educated by them; that thereafter she taught school some distance from the home of the testatrix and her sister and in 1911 she returned to their home, assisted in the housework and taught school in a local district school; that after testatrix's sister died, claimant's intestate gave up teaching and did the housework for and took care of the testatrix; that in the mutual wills of the testatrix and her sister each gave the life use of her property to the other and provided that after the death of the life tenant a trust fund should be created for the benefit of claimant's intestate, the principal thereof to be paid to her when she reached the age of forty years, and claimant's intestate was also given the furniture and other household property and a one-ninth share of the residuary estate; that one month after the testatrix died the claimant's intestate, then at the age of thirty-six, was killed; that the evidence shows that the testatrix agreed that the claimant's intestate would be paid " in the end " for her work and that she received nothing for her services during the period between 1912 and 1920.

It was error for the surrogate to reject the claim on the ground that the services rendered by claimant's intestate constituted an equitable offset to the cost of her education.

The fact that claimant's intestate gave a promissory note to the testatrix for a small sum of borrowed money is not inconsistent with the claim for services rendered, since the payment of the claim for services was under the arrangement to be deferred until the death of the testatrix.

If the testatrix intended by her will to make payment for the services she attached such conditions to the manner of payment that by the circumstances it was rendered impossible for either claimant's intestate or her representative to receive such payment and the provision in the will was, therefore, no payment at all.

Fourth Department, November, 1923.          [Vol. 207

APPEAL by Cassius M. Case, as administrator, etc., from a decree of the Surrogate's Court of the county of Chautauqua, entered in the office of said Surrogate's Court on the 14th day of February, 1923, disallowing his claim as such administrator against the estate of Rebecca C. Wood, deceased.

*Ottaway & Munson* [*Arthur B. Ottaway* of counsel], for the appellant.

*H. A. Clark*, executor, etc., of Rebecca C. Wood, respondent, in person.

*William S. Stearns*, for the respondents Ralph H. Smith and others.

DAVIS, J.:

The claimant is the representative of Helen C. Case, deceased. He presented a claim for services alleged to have been rendered by decedent to Rebecca C. Wood from June, 1912, to January 1, 1920, amounting to $3,890. The claim was rejected by the executor of Rebecca's will and has been disallowed by the surrogate on final accounting.

These facts are practically undisputed. Rebecca C. Wood and Sarah W. Chapin were sisters who lived together for many years in the village of Lamberton, Chautauqua county. Another sister had married Cassius M. Case. She died in 1878. He remarried, and Helen was his daughter by the second marriage. In 1897 Helen, then aged fourteen, went to live with Mrs. Chapin and Miss Wood who lived on a farm in a large house. Rebecca was an invalid. Helen was a strong, healthy girl. She attended the local school and subsequently the Brocton High School and the Fredonia Normal School from which she graduated. She also received some musical education. All the expense was borne by these women.

No doubt the original arrangement was mutually beneficial. Helen was given advantages she might not have enjoyed at home; and very likely she assisted in the care of the house, and was a pleasant companion.

After her graduation Helen engaged in teaching. In 1911 she had been a teacher in the Brocton High School for seven years. Then evidently at the request of these aged women, she returned to their home to teach a local district school and assist in the housework.

In March, 1912, Mrs. Chapin died. Thereafter Helen gave up teaching and remained with Rebecca, who was frail and feeble in health. It very clearly appears that she had charge of the house, doing practically all the work and to a large extent caring for

Rebecca. The latter died on January 1, 1920, in her eighty-second year.

There is no dispute but that the services she rendered were valuable, and that she received no compensation therefor except her board, perhaps part of her clothes, and a few opportunities for travel. We think on the evidence presented it cannot be seriously contended that the services performed were voluntary and gratuitous. That it was the purpose of these women that she eventually would receive reward is indicated by their mutual and reciprocal wills executed in December, 1907, Rebecca's will being confirmed by a codicil executed December 30, 1912.

In these wills each gave the other a life use of her property. After the death of the life tenant, the executor in each will was directed to create a fund of $5,000 and to hold the same as trustee and pay the income semi-annually to Helen until she should arrive at the age of forty years. When she reached that age the $5,000 was to become hers absolutely. The trustee was authorized during the intervening period, if Helen was in need, to pay her such part in excess of the income as he deemed necessary. After the death of the life tenant, Helen was also given all the furniture and other household property, and a one-ninth share of the residuary estate. She was given power to dispose of the corpus of the trust fund by will. On February 1, 1920, Helen at the age of thirty-six was accidentally killed. She left no will. In proceedings for a judicial construction of Rebecca's will the surrogate held that the legacy of $5,000 never vested, and his decision was affirmed in this court. (*Matter of Wood,* 199 App. Div. 903.)

Helen's administrator now seeks to recover on *quantum meruit* the value of her services under an alleged contract. Some effort was made to show that the contract was one contemplating payment during the lifetime of the decedent. There is testimony that Helen sought to obtain pay during the period of service. But the evidence tends chiefly to show that if there was an agreement it was one that she should be paid " in the end." In this arrangement she apparently acquiesced for she did not receive pay and continued at work.

The rule applicable to claims made against the estate of a decedent is that the claimant must as in all civil cases prove his claim by a fair preponderance of evidence, and that evidence should be clear and convincing. (*McKeon* v. *Van Slyck,* 223 N. Y. 392.) As HISCOCK, Ch. J., says in *Ward* v. *New York Life Ins. Co.* (225 N. Y. 314, 322): " He need do no more than this if his claim deals with a dead person; he cannot do less if he is attacking the rights and property of a living person. The general

rule as to weight and quality of evidence is no different in one case than in the other. In applying the rule and test to specific evidence, however, it very likely will and should occur that the triers of fact will more carefully and critically scrutinize evidence offered against a dead person's estate for the purpose of deciding whether it does make the necessary weight and preponderance of evidence, than would be done if the testimony was offered against one who was alive to contradict it."

In this case the fact that there was an express agreement to pay for the services is supported by the testimony of Helen's two sisters, who have no financial interest in the claim, and of other witnesses entirely disinterested. It is usually difficult in such cases where there is no writing to obtain evidence of the most clear and satisfactory character. People do not ordinarily recite the terms of such a contract in the presence of others. The surrogate saw the witnesses and observed their manner in testifying. Had he expressed doubt as to the quality of the proof made or of the credibility of the witnesses, we would hesitate to question his decision, even though the evidence seems reasonably clear and strong. He does not disallow the claim on such grounds. Rather, he takes the position that her services during those eight years were a sort of equitable offset to what she had received from the time she went into the home of these women as a girl until she came back there to work in 1912; and he treats the trust fund in the will for Helen's benefit as remuneration. Further, it appears that on September 1, 1917, Helen gave Rebecca a demand promissory note for forty-five dollars. This the learned surrogate says indicates clearly that Helen had no claim at that time.

We regard these grounds for rejecting the claim untenable. There is no evidence to indicate that Helen gave up a lucrative position as teacher and returned to the drudgery of housework and the care of these aged women to perform gratuitous services as an equitable adjustment of any claims for favors received years before. She received nothing from the trust fund under the will, and, therefore, that did not constitute payment. The giving of a note may constitute *prima facie* evidence that the payee was not at that time liable on an indebtedness to the maker. (*De Freest* v. *Bloomingdale*, 5 Den. 304; *Lake* v. *Tysen*, 6 N. Y. 461; *Dutcher* v. *Porter*, 63 Barb. 15.) It is a mere presumption which may be repelled by proof of the occasion of giving it and the attending circumstances. (*Sherman* v. *McIntyre*, 7 Hun, 592; *Farren* v. *McDonnell*, 74 id. 176; affd., 148 N. Y. 741.) The claim of Helen was not then due. Evidently all the money she had during the eight years came from her occasional employment by others. The

evidence discloses that she at times tried to obtain some money from Rebecca for her personal use. This was refused on the ground that Rebecca could not afford it, and that Helen would be paid " in the end." Giving a note for this small sum, under these circumstances, when payments to her were deferred, is not necessarily inconsistent with the fact that a claim actually existed. (*Duguid* v. *Ogilvie*, 3 E. D. Smith, 527; *Tummonds* v. *Moody*, 3 N. Y. Supp. 714. See, also, *Matter of Callister*, 153 N. Y. 294, 308.)

When a contract is made for services to be compensated by a fixed sum in the will of the one receiving them, upon failure of performance the claimant may sue to recover that sum from the representatives of the estate. If the sum is not agreed upon, he may recover the actual value of the services rendered as upon a *quantum meruit*. (*Robinson* v. *Raynor*, 28 N. Y. 494; *Collier* v. *Rutledge*, 136 id. 621; *Shakespeare* v. *Markham*, 10 Hun, 311; 24 C. J. 287.) In such an action, as already stated, a claimant is entitled to recover if he establishes by satisfactory proof a claim that is fair and equitable, and not so unusual or unconscionable that doubt is cast upon its probability. (*McKeon* v. *Van Slyck*, *supra; Ward* v. *New York Life Ins. Co., supra; Hausner* v. *Wickham*, 105 Misc. Rep. 735; affd., 186 App. Div. 931; affd., 230 N. Y. 578; *Scott* v. *Scott*, 66 App. Div. 610.) In such cases it is as important that those having meritorious claims should not be denied justice by over-cautious courts, as it is that the estates of deceased persons should not be looted through allowance of unconscionable claims by careless triers of the facts.

If Rebecca intended by her will to make payment for these services, she attached such conditions to the manner of payment that by the circumstances it was rendered impossible for either Helen or her representatives to receive such payment. It is, therefore, no payment at all. There is nothing to indicate that the bequest of the household furniture and other property and the devise of the residuary estate was intended as payment; nor does it appear that these have ever been offered or delivered to Helen or her representatives, or that they have any value.

For the reasons stated we reach the conclusion that the claim has never been determined on the merits; and the decree rejecting the claim should be reversed, with costs to the appellant to abide the event; and the matter should be remitted to the Surrogate's Court of Chautauqua county for a new trial.

All concur.

Decree reversed on the law and facts and new trial granted, with costs to appellant to abide event.