MARY MAY DONNARUMMA, Respondent, *v.* SAMUEL POTTER and
Others, as Executors, etc., of CARL F. W. G. UPMANN, Deceased,
Appellants.

First Department, November 28, 19·4.

**Executors and administrators — action to recover for services rendered
by plaintiff as housekeeper for defendants' testator — no evidence of
specific terms to pay plaintiff — plaintiff failed to sustain burden of
showing promise to pay or facts from which promise could be implied.**

In an action to recover for services rendered by the plaintiff as a housekeeper
for the defendants' testator, the plaintiff failed to sustain the burden of showing
a specific promise on the part of the testator to pay her for her services as
housekeeper or to show any facts from which such a promise could be implied.

APPEAL by the defendants, Samuel Potter and others, as executors,
etc., from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on
the 29th day of February, 1924, upon the verdict of a jury, and
also from an order entered in said clerk's office on the 28th day
of February, 1924, denying the defendants' motion for a new
trial made upon the minutes.

*Brussel & Beebe* [*John Vernou Bouvier, Jr.*, of counsel; *Harold R.
Medina* with him on the brief], for the appellants.

*William E. Russell* [*M. Wallace Dixon* with him on the brief],
for the respondent.

SMITH, J.:

The plaintiff was the stepdaughter of Carl F. W. G. Upmann,
the defendants' testator. Her mother, the wife of said Upmann,
died June 6, 1894. At that time the plaintiff was a married woman
not living with her mother, but living in a small apartment and
doing her own work. Upon the request of said Upmann the
plaintiff and her husband gave up their apartment and went to
live at his home. The plaintiff there had charge of the house
and did the usual work of the wife of the owner of a house, sat
at the head of the table, entertained her friends, as well as his,
and the plaintiff and her husband became, in fact, one of his family.
Her husband was given a position by the defendants' testator in
his business in 1897, and the husband left that business and went
to Chicago to go into business. Afterwards he desired his wife
to come and live with him there. Upon the inducement, however,
of Upmann she remained with him in charge of his household.
Thereafter, with his consent she brought into the house and into

the family her nephew, who lived in the family for about thirteen years. There is no evidence of any payments made to the plaintiff by Upmann during all of this time, except allowances of from five to ten dollars a month for necessary expenses of the house, and as she went away for a week or two in the summer, he paid her expenses. It was stated by plaintiff's counsel upon the argument that the plaintiff had a small income of her own, from which she apparently clothed herself. At one time while the plaintiff, Upmann and one of the plaintiff's friends were playing cards in the house Upmann stated to this friend that he had made good provision for the plaintiff in his will, and this statement was repeated at another time when the plaintiff was about to leave upon a European trip for a few months.

Upmann died on September 19, 1922, having, in fact, made no provision for the plaintiff in his will, and this action is brought to recover the value of the services of the plaintiff as his general housekeeper from 1894 to 1923. There was at all times a servant in the house doing such work as a general servant is accustomed to do, and the plaintiff's duties were only those usually performed in a household by the wife of the householder. The plaintiff has recovered the value of such services as a housekeeper for the twenty-eight years during which she lived at Upmann's house, and it is from the judgment entered upon this verdict that this appeal is taken by the defendants.

In point I of the respondent's brief it is stated: " It is quite true that there was no evidence offered of the specific promise and request made to plaintiff by decedent upon the death of her mother in June, 1894. As set forth in plaintiff's bill of particulars, this promise and request was made in the presence of plaintiff and her husband. The plaintiff's husband is dead, and the plaintiff's lips are sealed, and properly so, by the statute."

I am unable to find in the evidence any specific promise, expressed or implied, on the part of the defendants' testator to pay to the plaintiff any sum whatever as compensation for her care of the house. The plaintiff and her husband were living in a small apartment at the time of the death of the wife of the defendants' testator, the plaintiff doing all the household work. The husband of the plaintiff was given a position by the defendants' testator. They were taken into his family and they all became part of one family with the inferences or presumptions that would arise from such relationship. The statement sworn to that Upmann had provided for the plaintiff in his will constituted no legal promise or obligation to make such provision, and it is too indefinite to be made the basis of a recovery upon such ground. If we assume that the

plaintiff was not a member of the testator's family at the time that she was asked to come to this house and supervise the same, the fact that a home was thus tendered to her and that her husband was given a position by the testator, in the absence of any promise otherwise to pay for the services of the plaintiff, would seem to negative any intention on the part of the parties that there was to be a charge therefor. The plaintiff's apparent anxiety as to her future, as sworn to by her friend, would also seem to negative any promise at any time to pay to her either by will or otherwise any further compensation for her services than providing her with a home. We are not authorized to disregard well-settled legal rules and legal presumptions for her benefit. Why no provision was made for the plaintiff in the testator's will we have no knowledge whatever, but, without a contract either expressed or implied, to pay the plaintiff for these services, we are not justified in allowing a verdict to stand, whatever equity we ourselves even might deem to exist.

It is hardly necessary to cite authority for the proposition that, in a case of this character, the evidence to establish the claim against the estate should be clear and convincing. Those authorities have been fully digested in the case of *Ennis* v. *Chichester* (187 App. Div. 53), in an opinion written by our presiding justice, which case was affirmed in 227 New York, 663. The respondent, however, relies largely upon the case of *McKeon* v. *Van Slyck* (223 N. Y. 392), where the trial judge said to the jury that the court looked upon these claims with suspicion and that every detail of the claim must be brought out and proven by a preponderance of the evidence and that a contract of this kind must be given in all particulars by absolutely disinterested witnesses and established by the clearest and most convincing proof. This charge was held to be improper. Judge CRANE, writing for the Court of Appeals, said: " In civil cases a plaintiff is never required to prove his case by more than a preponderance of evidence. This is as true of actions against an executor, founded on claims put forward for the first time after the death of the testator, as it is of other actions. (*Lewis* v. *Merritt*, 113 N. Y. 386.) No doubt in determining whether the preponderance exists, the triers of the facts must not forget that death has sealed the lips of the alleged promisor. They may reject evidence in such circumstances which might satisfy them if the promisor were living. They must cast in the balance the evidence offered upon the one side and the opportunities for disproof upon the other. They may, therefore, be properly instructed that to make out a preponderance, the evidence should be clear and convincing." And this statement

of the rule has been further approved in the case of *Ward* v. *New York Life Ins. Co.* (225 N. Y. 314).

Under the rule as thus laid down, it seems clear that the plaintiff has not proven by a preponderance of the evidence any promise or any facts from which such a promise could be implied. The lips of the defendants' testator are closed by death and under all the authorities the claim can only be proven by clear and convincing testimony. The only promise which can here be claimed is by inference and by statements of the testator as to what he had done and not as to what he would do, and no promise can be implied even to pay a consideration upon the facts here disclosed by reason of a request to the plaintiff to become a member of the testator's family. All of the circumstances under which a promise is claimed to have been made conclusively negative any inferences by reason of such a request.

The judgment and order, therefore, should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.