In the Matter of the Judicial Settlement of the Estate of MILLARD F. ALDRIDGE, Deceased.

Surrogate's Court, Clinton County, December 31, 1929.

*Judge & Long,* tor the claimants Lincoln J. Aldridge, Lucille Aldridge and Maynard H. Aldridge.

*James B. Stearns [Egbert C. Everest* of counsel], for the objectors James B. Stearns, individually, and Herbert W. Aldridge.

*Feinberg & Jerry,* for Lincoln J. Aldridge and Warren F. Fairbank, administrators.

HARRINGTON, S. The decedent died intestate on October 13, 1928. The inventory of the estate shows that there was cash amounting to $543.76 in the hands of Mr. Fairbank, and a land contract from Mr. Fairbank to Hubert Patnode in the sum of $3,021. This contract, although in the name of Mr. Fairbank, was in fact the property of the decedent. It appears from the testimony of Mr. Fairbank that for some time prior to decedent's death he had held this property for the decedent at his request.

Decedent was about seventy-six years of age at the time of his decease. He had no home of his own and on February 8, 1928, he went to the home of Maynard H. Aldridge in the town of Chazy and remained there until the end. The testimony of the attending physician indicated that decedent had heart trouble, high blood pressure and other complications. During this period he was visited about three times a week by his physician. It would appear from the testimony of Dr. James H. O'Neill that Mr. Aldridge needed much care and attention. During this time the decedent's brother, Lincoln J. Aldridge, cared for him at night and his half sister, Lucille Aldridge, cared for him in the day time.

The claim of Lincoln J. Aldridge is for attending decedent at night for thirty-five and two-sevenths weeks at $35 per week, amounting to $1,235. The claim of Lucille Aldridge is for attending decedent days during said period of thirty-five and two-sevenths weeks at $40 per week, amounting to $1,411.42; various automobile trips with decedent during this period amounting to $175.50, making the total amount of her claim $1,586.92. The claim of Maynard H. Aldridge is for several items as follows: November 21, 1921, drilling a well ninety-eight feet deep and casing for well, $411.20; May 5, 1922, lumber, $24.30; August 1, 1922, hay, $30; October 1, 1928, medicine for decedent, $1.25; October 13, 1928, underwear and tie for decedent, $1.50; board, room and washing of decedent from

February 8, 1928, for thirty-three weeks, at $9 per week, $297; making the gross amount of the claim $765.25; less a cash payment on account on August 10, 1923, of $10, leaving the net amount of the claim $755.25. It should be noted that claimant's computation of the period during which decedent resided at his home is incorrect. This period is thirty-five and two-sevenths weeks instead of thirty-three weeks as claimed.

No proof was offered of an expressed contract made by the decedent to pay for the claims presented herein. However, a recovery may be had in such cases upon *quantum meruit*, even though an expressed contract for the payment of alleged services is not established, if the evidence shows the rendition of services under such circumstances as imply an agreement to pay therefor. (*Sturtevant* v. *Fiss, Doerr & Carroll Horse Co.*, 173 App. Div. 113, 115; *Matter of Wood*, 193 id. 473, 474; *McKeon* v. *Van Slyck*, 223 N. Y. 392, 399.)

The nature of the services performed for decedent by Lincoln J. Aldridge and Lucille Aldridge was testified to by the attending physician, Dr. O'Neill and by Mr. Fairbank, one of the administrators. Each claimant also testified for the other claimant in regard to the services so rendered. From the testimony of Mr. Fairbank, it would appear that the decedent had no other relatives to care for him and also that any money or property owned by decedent had been held by Mr. Fairbank for some time. I do not believe that the family relationship between the parties was such as to raise a presumption that the services rendered to the decedent by claimants were gratuitous. There can also be no question that decedent never paid for such services for, as above indicated, he had no property in his possession, during the period covered by these claims, with which to pay these claims. He was a man weighing over two hundred pounds, was required to be in bed more or less for two months prior to his death and continually during the last six days. During the period covered by these claims he was required to have administered to him, by Lincoln J. Aldridge and Lucille Aldridge, various medicines. It also appears that they had to assist him in many ways both day and night during this entire period. No evidence was given to disprove that such services had been so rendered by these claimants to the decedent. I am, therefore, satisfied that these claimants have proved their case by a fair preponderance of evidence, which is all that is required in such actions, as in all other civil actions. (*Caldwell* v. *Lucas*, 233 N. Y. 248, 254.)

It appears that the only experience at domestic nursing had by Lincoln J. Aldridge was in the care of his father and mother during

their later years  Lucille Aldridge had never had any previous training as a domestic nurse.  The testimony of several domestic nurses indicates that the salary for domestic nurses, in this community, is from twenty dollars to thirty dollars per week with board for experienced nurses and usually fifteen dollars per week with board for those who have not had prior experience.  In view of the nature of this case and the care which was given to the decedent in the home of Maynard H. Aldridge, I believe that Lincoln J. Aldridge should be allowed the sum of twenty-five dollars per week for his services in attending the decedent at night during the period covered by his claim, and the sum of eighteen dollars per week should be allowed Lucille Aldridge for the period covered by her claim for attending the decedent during the day.

The claim of Lucille Aldridge for $175.50 for various auto trips claimed to have been made by her with her own car for decedent during the period covered by her claim has not been established to my satisfaction.  There is no proper proof that the number of these trips as alleged were actually made, that they were necessary or that the price charged for the same was the reasonable price. This part of her claim as filed is, therefore, not allowed.

In regard to the claim of Maynard H. Aldridge, the testimony was adequate to establish the fact that the reasonable value of board, room and washing in that community was nine dollars per week, and there is no question but what Mr. Aldridge furnished the same to the decedent during the period covered, as above mentioned.  This claim is, therefore, allowed at the rate of nine dollars per week from February 8, 1928, to October 13, 1928.

No proof was offered in regard to the items of hay, lumber and other articles as above mentioned, except the testimony of the claimant upon his examination by the attorney for the administrators.  I do not believe that claimant has established his claim in regard to these matters by such proof as is deemed necessary in cases of this kind, and the claim for these items is not allowed. The item for drilling a well on November 21, 1921 is objected to on the ground that it is barred by the Statute of Limitations. Claimant's answer to this objection is that the alleged payment on his account against the decedent of ten dollars in cash on August 10, 1923, is sufficient to remove this item from the statute.  A contention of similar nature was urged in the case of *Adams* v. *Olin* (140 N. Y. 150).  At page 159 of the opinion the court states as follows: " In order that a payment shall operate to revive a debt barred by limitation of time, it should appear, in some reasonably intelligible way, to have been made on account of the previous debt; and, in the absence of evidence tending to prove that fact,

we should refuse to draw an inference from a condition of things, which is as consistent with one thoery as with another. If it is uncertain, or ambiguous, whether a payment was made as an independent transaction between the parties, and not connected with bygone transactions; or whether it was made on account of some precedent and lapsed debt, no inference should be drawn of an admission thereby of the old debt; for, to operate as such an admission, the payment must have been a deliberate act of the debtor, evidencing, or accompanied by some evidence of, an intention to thereby acknowledge to his creditor the existence of the greater indebtedness." There is no proof of this payment except that as given by the claimant on his examination by the attorney for the administrator. On such examination claimant admitted that he had never rendered a bill for this item and had never asked the decedent to pay the same. Under these circumstances, I do not believe that we can infer, even from the testimony of the claimant, that such a payment, if made, was an admission by the decedent of the old debt. The item for drilling the well is within the Statute of Limitations and is, therefore, not allowed.

Costs to be allowed to claimants and to objectors, pursuant to section 278 of the Surrogate's Court Act, to be taxed upon five days' notice to all parties. Prepare decision accordingly.