In the Matter of the Estate of MARGARET QUINN, Deceased.

Surrogate's Court, New York County, December 21, 1931.

*James M. Grady*, for the administrator.

*Albert G. McCarthy, Jr.*, for the claimant.

FOLEY, S. In this contested accounting proceeding Eleanor P. Higgins has submitted for adjudication her claim against the estate for the reasonable value of board and lodging and other items alleged to have been furnished to the decedent. The claim covers a period of approximately seventeen years. The claim is disallowed in its entirety.

Margaret Quinn was by occupation a practical nurse. For some time prior to 1913, when the claim is alleged to have arisen, she and Mrs. Higgins, the claimant, appear to have been close personal friends. They both resided in Pawtucket, R. I. The Higgins family moved to New Jersey and resided in various towns there. They subsequently came to Brooklyn in this State. It is claimed that Miss Quinn lived with them from time to time at their various residences. The principal testimony in support of the claim is offered by the husband of the claimant. A general charge at the rate of six dollars per week is made for the use of a furnished room occupied at times by Miss Quinn and in her absence claimed to have been kept for her use during the continuous period of seventeen years. A separate item, with the same weekly charge, covers the meals claimed to have been furnished to her during parts of this period, ranging from a term of five weeks to a continuous term of ninety-seven weeks.

The testimony submitted by the administrator in opposition to that of the claimant is convincing. Many disinterested witnesses testified that practically during the entire period covered by the claim, Miss Quinn was employed with fair regularity as a practical nurse, and resided night and day either in a hospital or in the homes of her patients. When she was not so employed it appears that she occupied a furnished room at places other than the residence of the claimant. The testimony for the opposing sides presents a strange contrast. For the claimant, she is pictured as neglecting the payment of her board over a long period of years. For the estate, the witnesses testified that she was prompt and punctilious in the payment of rent of the room occupied by her at places other than the claimant's home. The testimony of the witnesses for the estate, particularly Mrs. Porcher, a former employer and friend of the decedent, and Dr. Bevan and Dr. Perkins was supported by documentary proofs, diaries and physician's records clearly showing the dates of employment and the successive residences of the decedent. These reputable physicians had recommended her to their patients for employment and had observed her in regular attendance for periods of years. They have established to my satisfaction that Miss Quinn could not have resided at the home of the claimant during substantial parts of the times fixed by the claimant's witnesses. This evidence not only contradicts, but destroys the version given by the husband of the claimant as to the sojourns of the decedent at his home. A woman in receipt of relatively small wages would hardly have maintained simultaneously two separate places of abode with the double obligation of rent.

A clear inference follows from a review of the testimony that

the items of the claim were built up out of a very defective memory or fabricated in disregard of the facts. There is no evidence that a definite rate was fixed by either of the parties for the accommodations claimed to have been furnished. Nor is there proof of a demand upon Miss Quinn at any time for a specific amount due the claimant. It also clearly appears that the relationship between the parties was one of intimate friendship. There has been established no implied obligation on the part of Miss Quinn to pay for the room claimed to have been kept for her. Her visits to the home of Mrs. Higgins were casual and comparatively brief and the meals furnished her there were plainly gratuitous and without any anticipation of payment. This picture of friendly hospitality in the lifetime of the decedent, with possible expectation of remembrance in a will, cannot be changed after her death into one of legal liability against her estate. One incident occurring during the proceeding was characteristic of the nature of this claim. The Statute of Limitations was raised as a partial defense by the administrator. Thereupon the claim was amended to avoid the six-year limitation, by alleging that a partial payment of fifty dollars was made in 1925 by the decedent to the claimant. The claimant had previously sworn in her affidavit in support of the original claim " that there are no set-offs against " it and that " no part thereof has been paid." This assertion of a part payment was obviously an afterthought. The husband of the claimant has testified to this payment. I have rejected as unworthy of belief his evidence that the sum was ever paid on account of any valid indebtedness.

The inference follows from all the testimony that Mrs. Higgins expected to be remembered in a will by Miss Quinn. The gross estate was $8,761. The net estate, after the payment of debts and administration expenses, is approximately $7,250. The claim asserted here amounts to $8,701. It was built up apparently to absorb the entire estate and to divert it from the next of kin. Miss Quinn died without leaving a will. The disappointment of the claimant over not receiving a legacy cannot be made the basis of recovery in the absence of an established promise or agreement, express or implied, to pay for board or lodging. (*Collyer* v. *Collyer*, 113 N. Y. 442, 448.)

The increasing frequency of the presentation of claims of this nature in estates justifies a brief reference to the authorities pertinent to their disposition. These decisions relate to claims usually asserted for the first time after the death of the decedent, for board or lodging, or for services rendered, or upon a promise supported by an alleged consideration to make a disposition in favor of the claimant by will, or upon a gift *causa mortis* or *inter vivos*.

Some of them are meritorious and are established by satisfactory proof. Trusting persons are sometimes led to board or house a friend or relative. The circumstances call for payment of a definite sum or an implied promise to pay the reasonable value. The charge may accumulate and remain unpaid at death. The majority of these claims, however, as shown by the decisions, are without merit. The latter class sometimes represents attempts by certain relatives to obtain an excessive part of the estate in disregard of the terms of the will or of the intestate share which the law gives them. In the trial of these claims it is as important that those having meritorious claims " should not be denied justice by over-cautious courts, as it is that the estates of deceased persons should not be looted through allowance of unconscionable claims by careless triers of the facts." (*Matter of Wood*, 207 App. Div. 41, 45.) Suspicion by the court is never justified, but the complete proofs are to be analyzed and the issues fairly determined upon the sufficiency of the evidence. By reason of the death of one of the parties, they are disproved with difficulty. The law wisely scrutinizes the circumstances in such cases in order " to prevent such raids on the estates of decedents." (*Butcher* v. *Geissenhainer*, 125 App. Div. 272.) In *Hamlin* v. *Stevens* (177 N. Y. 39) the Court of Appeals in vigorous language characterized the dangerous nature of claims asserted by persons for the first time after the death of the decedent against his estate. The court observed that the savings of a lifetime may be taken from the heirs by the testimony of interested witnesses. It condemns the motives of unworthy claimants as " the natural resort of unscrupulous persons who wish to despoil the estates of decedents." (See, also, *Donnarumma* v. *Potter*, 211 App. Div. 54; *Ennis* v. *Chichester*, 187 id. 53; affd., 227 N. Y. 663.)

The more recent decisions of the Court of Appeals have more carefully defined the rule as to the degree of proof in such cases. The claimant is only required to make out a case by a fair preponderance of the evidence, but the law does not specify of what the evidence shall consist to make out a fair preponderance. " As in every other case it is for the triers of facts to take into consideration all the circumstances such as the nature of the claim, tardiness in its presentation, the death of the man against whose estate the claim was presented, etc., in arriving at a conclusion." (Per CRANE, J., in *Caldwell* v. *Lucas*, 233 N. Y. 248, 254, citing *McKeon* v. *Van Slyck*, 223 id. 392; *Ward* v. *N. Y. Life Ins. Co.*, 225 id. 314.) In restating this rule the Court of Appeals, it will be noted, cited the *McKeon* and *Ward* cases. It did not repeat the limitation stated in those decisions that within the rule as to a fair preponderance the evidence in support of the claim should be *clear*

and *convincing.* It is to be hoped for the protection of estates that the omission was not intentional and that the court did not indicate a departure from that important requirement of the sufficiency of proof. Where the case is tried by a judge or a surrogate without a jury, that test is essential. Where it is tried with a jury, an instruction to the jury to the same effect, even as a counsel of caution, is most desirable.

In the pending proceeding the surrogate has sought to apply to the evidence the rule as to the degree of proof set forth in *Caldwell* v. *Lucas* (*supra*).

Submit decree on notice dismissing the claim upon the merits and settling the account accordingly.