## In re ZEGEL.

(Supreme Court, Appellate Division, Second Department.   March 10, 1916.)

EXECUTORS AND ADMINISTRATORS ⬤⟶206(1)—CLAIMS AGAINST ESTATES—SUP-
    PORT—GIFTS.

    Where it was the established custom among the people of the locality
for the adult children who lived at home to contribute to the family sup-
port all their earnings, receiving in return a small allowance therefrom,
their board, lodging, and clothing, in the absence of evidence of an ex-
press or implied agreement between parties shown to have recognized the
custom, an adult son, as executor of his deceased father's estate, could
not require the repayment to him of earnings so contributed before his
father's death, by a claim in his account filed seven years thereafter.

    [Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 733; Dec. Dig. ⬤⟶206(1).]

,Appeal from Surrogate's Court, Suffolk County.

In the matter of the judicial accounting of Paul E. Zegel, as execu-
tor of Meindert Zegel, deceased. From a decree of the Surrogate's
Court, the contestants, Maatze Zegel and Tonis Zegel, appeal. Re-
versed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and
PUTNAM, JJ.

George H. Furman, of Patchogue, for appellants.

George Lupton Robinson, of New York City, for respondent.

PUTNAM, J.   Meindert Zegel, a West Sayville oysterman, died in
December, 1905, leaving a widow, Maatje, and three children, of
whom Paul was the youngest.   His will named Paul as executor, and
gave his property to his widow for life, and then to go equally to the
three children.   For four or five years before his father's death Paul
had lived at home, working with his father in the oyster business,
and when engaged outside, in clamming and other employments, he
had paid his earnings to his mother, who used them with the house-
hold funds.   Though over 21 years old, Paul then received only board,
clothes, moderate spending money, with gifts of $5 or $10 on Fourth
of July and $20 or $25 at Christmas.   After the father's death, Paul
lived in the house with his mother, to whom as executor he paid the
income of the estate.   The mother made a will in Paul's favor.   In
1909 Paul married and set up housekeeping in a part of the house oc-
cupied by his mother, paying rent therefor.   The mother afterwards
destroyed her will, and so informed Paul.

In filing his account as executor on December 16, 1912—seven years
after his father's death—Paul included a claim for work, labor, and
services in his father's oyster business for parts of the years 1900–
1903, inclusive; also for the gross earnings in these years from clam-
ming and other pursuits, which he had turned over to his mother from
week to week.   The widow, Maatje Zegel, and Tonis Zegel, a brother,
filed objections to this account.   In the hearings before the surrogate
there was uncontradicted evidence of an old-world custom, brought
over and observed among the Hollander fisherfolk at West Sayville.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It had long been the local usage that a son, although over age, who continued to live at home with his parents, only received his board and clothes, with an allowance for spending money and for holidays.

As there was no evidence of any agreement, express or implied, to pay Paul wages while he was at home, the learned surrogate rejected that part of his claim. He, however, allowed him $1,834, being $1,-584 for the average weekly gross earnings paid to his mother, also a further sum of $250 for part proceeds of an oyster lot, also paid over to her. The court made a finding, to which there was no exception, that there was no evidence that deceased had any knowledge of such payments to his wife, or knew that she used such earnings for family expenses, or had mingled them with deceased's other moneys. The custom at West Sayville among the Dutch oystermen as to sons working for their parents while still members of one household, with these negative findings as to any promise, knowledge, or understanding by Meindert Zegel to repay these gross earnings, repel any presumption of a promise, direct or implied, which would require the estate to pay back to respondent his earnings, after seven years, or give him the standing of a creditor of the estate. Matter of Delaney, 27 Misc. Rep. 398, 58 N. Y. Supp. 924; 29 Cyc. 1621.

The decree of the Surrogate's Court of Suffolk County should therefore be reversed, and respondent's claim in his account against the estate entirely disallowed, with costs. All concur.