In the Matter of the Estate of S. ANNA NYE GREEN, Deceased.

HENRIETTA WILSON, Residuary Legatee, Appellant; MERCHANT B. HALL, as Executor, etc., of S. ANNA NYE GREEN, Deceased, Respondent.

Fourth Department, May 6, 1936.

*Albert E. Campbell*, for the appellant.

*David B. Lisle*, for the respondent.

EDGCOMB, J. S. Anna Nye Green died on the 21st day of August, 1934, leaving a last will and testament in which she named Merchant B. Hall, a prominent attorney of Vernon, N. Y., as her executor. Henrietta Wilson, the residuary legatee, seeks to have the executor's account surcharged with the sum of $1,500, which she claims was owing by Mr. Hall to the decedent at the date of her death, and with the further sum of $400, the unpaid balance of a promissory note given to the decedent by Bertha Bovee. The objections were overruled, and the contestant appeals.

The facts relating to these two matters are not disputed. The evidence, however, raises several interesting questions of law.

Decedent was seventy-nine years of age at the time of her death. Her husband predeceased her by some six months. They resided in Vernon, a small village in Oneida county. The gross amount of decedent's estate, outside of the disputed claims, was slightly over $11,000. Mr. Hall had known both Mr. and Mrs. Green for many years; he had performed many acts of kindness for them, and had looked after their business interests, and transacted such legal work as they required. He never charged, nor was he ever paid for such services. The couple were appreciative of these attentions; on one occasion decedent told a friend that her own son could not have done more for her, and that she could never repay Mr. Hall for his kindness. When he was drawing her will, she suggested that she would like to make him a bequest, but he replied that he did not want any one to think that he had influenced her to leave him anything. She did not press the matter further.

In March, 1933, at the time of the bank holiday, the National Bank of Vernon, the only banking institution in the village, was closed, along with all the other banks of the country. It was not permitted to open until $30,000 had been paid in as additional capital. Mr. Hall was a director and attorney for the bank. He subscribed $1,500 toward the amount to be raised before the institution could resume business. On May 12, 1933, Mr. and Mrs. Green drew a check for $1,500 on a joint account which they had in the bank, and delivered it to Mr. Hall, who indorsed it and turned it over to the bank in payment of his subscription to the needed additional capital. Decedent and her husband were not interested in the bank, except as depositors and as public-spirited citizens of the community. The subscription blank provided that the money subscribed was to be used as additional capital, and was to be repaid to the contributors in cash from the earnings of such bank ahead of all payments to be made to the common stockholders. Mr. Hall gave back to his benefactors a

note for $1,500. Decedent stated that all she and her husband wanted was to have the interest paid, and that after both of them were gone the note was to be canceled.

The contestant insists that this transaction was a loan, for which the executor must account. Mr. Hall, on the other hand, asserts that he is not accountable for this money for any one of the following reasons: (1) That it constituted a gift to him; (2) that it was a subscription on the part of the decedent and her husband to the bank; (3) that it was given and accepted as payment to him for past services.

We may dispose of the two latter suggestions first, as the main contention of the executor seems to be that the money was a personal gift to him. He made that claim to the contestant before the hearing in this proceeding.

It is very apparent that this sum was not a personal contribution by the decedent or her husband to the bank. She had made no subscription to the additional capital. If the earnings of the bank in the future were sufficient to warrant the return of the money to the donor, it would go, under the subscription agreement, to Mr. Hall, and not to the decedent or her husband.

Neither can it be said that the money was a payment to Mr. Hall for past services. While, as before noted, he had looked after the decedent and her husband in the past, what he had done was done of his own free will and accord, and because of his friendship for this aged couple, and not for the hope of any pecuniary reward. Such services imposed no legal liability upon the part of the decedent or her husband. It cannot be claimed at this late date that the $1,500 was a payment to Mr. Hall of a debt which did not legally exist, and which he could not enforce. (*Blanshan* v. *Russell*, 32 App. Div. 103, 105; affd., 161 N. Y. 629.)

But the executor says that he is not obliged to account for this money, because it was a gift to him, and was, therefore, his own personal property.

While the law recognizes the right of every man to dispose of his property, whether by donation or otherwise, as and when he desires, there are certain well-recognized elements to a valid gift *inter vivos*, without which such a gift cannot be established. These essentials are set forth in *Matter of Van Alstyne* (207 N. Y. 298, 306); *Beaver* v. *Beaver* (117 id. 421, 428), and kindred cases, and need not be restated in detail here. While certain of those requisites are present in the instant case, several are missing.

There is ample evidence to justify a finding that the decedent desired and intended to eventually make Mr. Hall a present of this money. But a mere intention to make a gift, no matter

how clearly it may be expressed, which has not been carried into effect, amounts to nothing, and confers no rights upon the intended beneficiary. (*Wadd* v. *Hazelton*, 137 N. Y. 215, 219; *Martin* v. *Funk*, 75 id. 134, 137, 138; *Hunter* v. *Hunter*, 19 Barb. 631, 635.)

Neither will equitable considerations, or a desire to see the decedent's wish carried out, turn the scales in the executor's favor. (*Holt* v. *Tuite*, 188 N. Y. 17, 23, 24.)

To establish a valid gift, it must appear that there was a delivery of the property to the donee with an intent upon the part of the donor to immediately divest himself of all title and right thereto, and the evidence must be inconsistent with any other design on his part. The donor must release all control over the property. A gift to take effect in the future is void as a promise without consideration. (*Matter of Bolin*, 136 N. Y. 177, 180; *Gannon* v. *McGuire*, 160 id. 476, 481; *Curry* v. *Powers*, 70 id. 212, 217; *Gilkinson* v. *Third Ave. R. R. Co.*, 47 App. Div. 472, 473; *Rosenburg* v. *Rosenburg*, 40 Hun, 91, 96.)

The delivery of the note by Mr. Hall to his benefactors, notwithstanding their assurance that when "they were both gone the note was to be cancelled," deprived the transaction in question of the characteristics of a gift *inter vivos*. It is void as a testamentary disposition of the property, because it was not made with the formalities surrounding the execution of a will.

It is very true that the mere promise of Mr. Hall to pay interest during the lives of Mr. and Mrs. Green would not necessarily strip the transaction of the essentials of a gift. If the title to and possession of the money vested immediately in Mr. Hall, and if his promise to pay interest thereon for a time did not amount to a condition of delivery or affect the custody or control of the money, it would not invalidate what would otherwise be a gift. (*Doty* v. *Willson*, 47 N. Y. 580, 584, 585.)

But there is more here than a mere promise to pay interest upon money irrevocably transferred to a donee. A note for the amount received was given back to the donors, and was held by them; they had in their possession and under their control the indicia of indebtedness from the alleged donee for the amount of the alleged gift. Under such circumstances there was not such an unqualified delivery or parting of control of the money by the donors, or such a vesting of title thereto in the donee as to constitute a gift *in præsenti*. (*Young* v. *Young*, 80 N. Y. 422.)

The executor urges that, if the $1,500 be held to be a loan rather than a gift, the estate should not be benefited by a return of more than half that amount, because, he says, this was a joint indebtedness owned by decedent and her husband.

It will be remembered that the check in question was signed by both Mr. and Mrs. Green, and was drawn on a joint account which they had in the bank. While the note given by Mr. Hall is not before us, we are told that it was given to " them," meaning decedent and her husband. Assuming that the interest of the decedent and her husband in the money taken from the bank was not changed by its withdrawal and by its being loaned to Mr. Hall, Mrs. Green succeeded to her husband's interest at the date of his death. Upon the death of one joint tenant, there being no severance, his interest goes to the survivor. Mr. Green's estate, therefore, has no share in this indebtedness; it belongs in its entirety to Mrs. Green's estate.

This brings us to the claim of the contestant that the executor's account should be surcharged with the unpaid balance of a note given by Bertha Bovee to the decedent.

It appears that prior to Mrs. Green's death she had loaned Mrs. Bovee $500, for which the latter had given her note, and on which she had paid interest as it became due; $100 had been paid to apply upon the principal.

Mrs. Bovee was not related to Mrs. Green, but the two were close friends. The note was in Mr. Hall's possession, as attorney for Mrs. Green, for the purpose of collecting the interest as it became due. On the day of Mrs. Green's funeral Mr. Hall delivered the note to Mrs. Bovee, and she destroyed it.

Mr. Hall was permitted to testify, over the contestant's objection, that shortly before decedent's death she told him that she desired to give the note to Mrs. Bovee, but did not want to make such a provision in her will. She said, " I want you to hold it the same as you are holding it now, and receive the interest, and when I pass out I want you to give that to Bertha, and I won't mention her in my will."

It was upon this evidence that the surrogate found that the decedent had made a gift of the note to Mrs. Bovee.

We think that it was error to receive this evidence. Mr. Hall had delivered the note to the maker, and had allowed her to destroy it. He was seeking to be allowed a credit as against the contesting residuary legatee. The controversy was between him and the contestant. He was a person interested in the event within the meaning of section 347 of the Civil Practice Act, and was, therefore, incompetent to testify as to any personal transaction or communication which he had had with the decedent. (*Matter of Smith*, 153 N. Y. 124; *Matter of Goss*, 98 App. Div. 489, 492; *Matter of Mulligan*, 82 Misc. 336, 340; affd., 165 App. Div. 912; *Matter of Knibbs*, 108 id. 134.)

But this evidence, if it is permitted to remain in the case, falls far short of establishing a gift of the note to Mrs. Bovee.

The transaction may have certain elements of a testamentary disposition, but not those of a gift *inter vivos*. The decedent held on to the note during her life, and kept it in her possession, or that of her attorney. There was no delivery to the donee, nor acceptance by her. She did not know, so far as we are informed, of the intended present.

It is true that delivery of property need not necessarily be made to the donee in person, but may be made to a third party for and on his behalf. (*Vincent* v. *Rix*, 248 N. Y. 76, 83; *Bump* v. *Pratt*, 84 Hun, 201, 204.) But it cannot be said that Mr. Hall was the agent of Mrs. Bovee to accept this gift. He had the note in his possession, as agent and attorney for the alleged donor, at the very time of this conversation. Even if he could hand it over from himself, as agent for the donor, to himself, as agent for the donee, he was never authorized to act in the latter capacity. Mrs. Bovee knew nothing about any such arrangement. Besides, Mrs. Green told Mr. Hall that she wanted him to hold the note the same as he was then holding it (that is as her attorney) until her death. The note never got beyond the possession and control of Mrs. Green, and, as there was no delivery to or acceptance by the donee, there was no gift.

For the reasons stated, we think that the surrogate erred in dismissing the contestant's objections, and that the executor's account should be surcharged with both the $1,500 due the estate from the executor, and the $400 due from Mrs. Bovee.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Decree reversed on the law, with costs to the appellant payable out of the estate, and matter remitted to the Surrogate's Court to enter a decree in accordance with the opinion.