In the Matter of the Accounting of GERTRUDE FINCH, as Administratrix of the Estate of ELLA MULDERIG, Deceased.

Surrogate's Court, Broome County, December 15, 1949.

*John R. Normile* for administratrix.

*Edward F. Ronan* and *Harold S. Taylor* for Madalyn A. Mulderig, claimant.

PAGE, S. This decision deals with a rejected claim for $572 for nursing care of decedent in her lifetime by her daughter-in-law, Madalyn A. Mulderig.

At the close of claimant's evidence, a motion was made to dismiss the claim for insufficiency of evidence. A decision upon this motion was filed herein (reported, 196 Misc. 527). Claimant's evidence was reviewed in this decision and need not be extensively re-examined. It was held to be sufficient to make out a prima facie case, and the motion was denied.

The other side has now been heard. The over-all present question is whether the evidence adduced by the administratrix tending to weaken the position of claimant does so to a degree such that it cannot now rightly be said that the claimant has sustained her burden of proof.

Claimant's evidence (despite the handicap of section 347 of the Civil Practice Act) was deemed to be sufficient to withstand a nonsuit upon credible testimony that witnesses, during the period of time in question, with a considerable degree of regularity, saw claimant, about eight o'clock in the morning, entering the house where the decedent was then living, and leaving the house around six o'clock in the afternoon. Also, the attending physician testified to the effect that several times he observed that claimant was staying with and caring for her mother-in-law, Ella Mulderig. Further, there was testimony to the effect that Ella Mulderig had stated to witnesses that the care she was receiving from claimant was excellent and that she intended to pay her for her services.

Testimony of the administratrix, supported and corroborated by her sister and two of her brothers, is to the effect that their mother (the decedent) did not need a practical or other nurse from November 27, 1939, until April 15, 1940, but only during about the last four weeks of the period covered by claimant's claim. They were corroborated in this by Dr. Berlinghof, the attending physician. About April 15, 1940, their mother suffered a severe attack and remained in critical condition at the home of the administratrix until removed to the hospital about May 12, 1940. During this time they all, including claimant, took turns in maintaining day and night attendance upon the mother. But, these witnesses all testified that the claimant, Madalyn Mulderig, was with their mother only occasionally over all of the period of time in question, and that she never gave her nursing care other than waiting on her similarly to the others. Nurse Anne Kennedy testified that, as a regis-

tered nurse employed by the Metropolitan Life Insurance Company, she visited and gave nursing care to decedent about every other day during the period of her severe illness before her removal to the hospital. These visits were all in the daytime but she had no recollection of having ever seen Madalyn Mulderig. Although, she allowed, it was possible Madalyn might have been with decedent at the times of some of her visits, there was never any communication whatever between herself and Madalyn in regard to nursing care of the patient or otherwise.

Let us first consider the period of time covered by the claim, before Mrs. Mulderig, concededly, was stricken much worse than she had been. That is up to April 15, 1940. Of course, it could readily be and frequently is true that a person not desperately ill, and only somewhat incapacitated, has a nurse or attendant. But, taking into consideration the sharp conflict in testimony, together with decedent's means and accustomed manner of living, the necessity for having a nurse has a material bearing upon the issue of fact as to whether she actually did have one or not, in the sense that she knowingly was employing the claimant, that Madalyn was her employee rather than a devoted daughter-in-law.

Testimony that the decedent had indicated to witnesses an intention on her part to pay for services is unreliable. This would be true of the testimony by any witness as to a casual conversation or oral statement heard several years ago, especially, unless it fits well in the setting of the evidence as a whole.

In addition to the major evidentiary considerations to which previous reference has been made, there are two others. Claimant, in effect, conceded in her testimony that the relationship between herself and mother-in-law (the decedent) was substantially the same as the natural and usual relationship between a mother and daughter. Although an "in-law" relationship is sometimes very different, it would not need to run to the opposite extreme, exemplified in the idyllic classic of Ruth and Naomi, in order that it might be regarded as are other close relationships which, except under special negativing circumstances, dispel the ordinary contractual implication. *Matter of Green* (247 App. Div. 540) is a case to the effect that the basis of negation of an implied contract need not necessarily be any more than a long-continued and well-demonstrated friendship.

Also, the present criteria indicative of a deficiency in the claim's support is augmented and accentuated by the undis-

puted fact that the claimant never presented any claim to decedent in her lifetime, and that she filed none with the administratrix either until about fourteen months after the issuance of letters of administration. Such laches was the main adverse determinant in *Matter of Long* (144 Misc. 181). It is difficult to escape the inference that the claim was an " afterthought " in such cases.

As a general proposition, the rendition and acceptance of services, *ipso facto,* implies a contract to pay their reasonable value. An old and leading case which sets forth this principle is *Moore* v. *Moore* (21 How. Prac. 211, 3 Abb. Ct. App. 303, 312). (See, also, *Matter of Mason,* 134 Misc. 902, 904, and *Matter of Hughes,* 229 App. Div. 614.)

But this principle is frequently held inapplicable in cases of a relationship, kinship or otherwise, between parties, indicative of a negation of the usual implication. So, in instances where there is such a relationship, a valid express contract is the only dependable implementation of a recovery. As stated by LEHMAN, J., in *Robinson* v. *Munn* (238 N. Y. 40, 43) : " The inference of an implied contract to pay the reasonable value of services rendered which may arise from the mere rendition and acceptance of the service cannot be drawn where because of the relationship of the parties, it is natural that such services should be rendered without expectation of pay." (See, also, *Matter of Mason, supra; Matter of Long, supra,* and *Matter of Flood,* 133 Misc. 77, and cases there cited.)

Where there is or was a bond of relationship, or some equivalent circumstance, then, because of our mores and common experience with respect to the amenities of civilization, the implication of a contract is regarded as having two strikes against it. It is out unless there is some special consideration rationally differentiating the situation in some such manner, as is variously exemplified in the cited group of cases *infra.*

In cases by way of implication, the contractual basis must rest on practically unequivocable evidence of a mutual expectation and intent that, despite the relationship, payment to the renderer of services or other benefits would eventually become due from the recipient.

As shown by the above-quoted commentary of Judge LEHMAN, the adduction of evidence strong enough to overcome the presumption because of the relationship is frequently found to be difficult or impossible. But, in some cases of this category,

the conditions have been such that it has been determined that a recovery could be had and a *quantum meruit* has been awarded. Illustrative cases include: *Matter of Hamilton* (70 App. Div. 73, affd. 172 N. Y. 652); also, *Matter of Burton* (143 Misc. 440); *Matter of Chafee* (122 Misc. 768), and *Matter of Enos* (61 Misc. 594). In the present case an approach to this solution would have inhered in unimpeached or less controverted evidence of claimant's actually being a qualified practical nurse and, suspending work elsewhere, serving regular daily hours away from her own and at the residence of her mother-in-law.

The general presumption of an implied contract is, of course, based on its intrinsic probability. The underlying theory of this presumption is that it just doesn't " add up " or make sense that, as between two who are in no way related to each other, one would gratuitously be supplying the wants or ministering to the needs of the other. Although by no means unknown (recall the good samaritan), such a thing is, ordinarily, not normal and, therefore, it is not probable. But in cases of a subsisting relationship between the parties, there is a counterinference. This, too, is based on probability, but in the opposite direction. The basis of offsetting such counterprobability must comprehend something by way of special circumstances or conditions which are shown to be strong enough to swing the balance between the conflicting probabilities back into the orbit of the general and usual probability characteristic of such transactions.

In the *Long* case (144 Misc. 181, 187, *supra*) the court said: " In determining the validity of a claim presented against the estate of a decedent it is for the court to take into consideration all of the facts and surrounding circumstances, such as the relation of the parties, the nature of the claim presented, the financial conditions, etc., in arriving at a conclusion," (citing *Caldwell* v. *Lucas,* 233 N. Y. 248; *McKeon* v. *Van Slyck,* 223 N. Y. 392, and *Ward* v. *New York Life Ins. Co.,* 225 N. Y. 314). All this we have endeavored to do.

As a conclusion unrelated to the decision but yet derived from an appraisement of all the evidence, it appears that the claimant gave of her time and efforts in caring for her mother-in-law much more than any of decedent's own children. Because of this, it would seem, but only as a moral obligation, that the administratrix and other children of decedent should have recognized this to some reasonable extent.

But, viewing the present situation as a whole, as the several evidentiary considerations are appraised in respect to their respective bearings in accordance with the applicable principles authoritatively established and binding on us, leaves a necessary legal basis for a recovery in this proceeding, a sufficiently established implied contract, somewhat short of minimum requirements. The composite evaluation of all the evidence is such that we cannot say there is a preponderance sufficient to support the implication of a contract. The administratrix' rejection of the claim must, therefore, be sustained and confirmed and the decree of judicial settlement of her account is to be settled accordingly.