Lawrence E. Kahn, S.
This is an action to compel an *421 accounting in the estate of Eleanore Wilson. This proceeding has been brought as the result of respondent executor’s disallowance of certain claims brought by petitioner, Citibank.
There are several crucial issues presented in this proceeding which relate to determining whether respondent must pay the two claims asserted by petitioner.
The applicable facts are as follows: Decedent, Eleanore A. Wilson, died April 25, 1975. Her will was admitted to probate and letters testamentary were issued on June 16, 1975. The respondent, Nathan Medwin, since qualifying as executor has collected the assets of the estate and paid various claims. On or about April 12, 1976 the petitioner presented to respondent two claims against the estate totaling the sum of $2,505.44 for money allegedly loaned to decedent during 1973. One claim is in the sum of $1,102.91 representing unpaid moneys allegedly overdrafted by the deceased in her checking plus account and the other claim is in the sum of $1,402.53 representing an installment loan allegedly made to deceased and allegedly still unpaid. On April 14, 1976, respondent’s attorney sent to petitioner’s attorneys a conditional notice of disallowance if further documentation was not submitted. Correspondence and certain documentation were exchanged between the attorneys as to these claims, and respondent finally rejected the claim on June 11, 1976 and gave written notice of such rejection to petitioner.
As to the checking plus account claim of $1,102.91, respondent has produced two of deceased’s bank statements from petitioner, one dated January 22, 1974 and another February 22, 1974 showing a zero balance, as well as an available credit of $1,000. Respondent contends these bank statements constitute a receipt for full payment of said claim. In the alternative, respondent contends that credit life insurance should have paid off the claim at the decedent’s death and that petitioner improperly canceled such insurance coverage in that no written notice of termination of said insurance was given to deceased and in that the certificate of insurance issued to deceased did not provide for termination of said insurance upon default.
Petitioner alleges that the bank statements were incorrect and may be impeached by petitioner on the ground of mistake and further alleges that there was no contractual obligation requiring petitioner to maintain credit life insurance on the "checking plus” account and, therefore, respondent does not *422 have standing to object to the termination of such insurance by petitioner.
As to the installment loan claim of $1,402.53, respondent alleges that credit life insurance purchased with said loan should have paid off the claim at decedent’s death, in that: (1) decedent received no written notice of termination of said insurance; (2) neither the front nor back of the installment note provides that said insurance terminated upon default and in the alternative; (3) automatic payments from the checking plus credit account should have begun in January of 1974 when there was allegedly a $1,000 credit available.
To these contentions, petitioner replies that upon Mrs. Wilson’s default in payments, petitioner was entitled to stop its performance under the contract, including the performance of maintenance of the agreed upon credit life insurance on the account. Petitioner adds that upon such default, petitioner was required by law to take reasonable action to minimize its damages, including the dropping of said insurance. It is also alleged that the terms of the promissory note particularly with respect to the life insurance do not limit petitioner’s rights and duties.
The court’s determination rests upon the following issues: (1) Were the covenants agreed upon by the deceased and petitioner dependent or independent, particularly with regard to the maintenance of credit life insurance by petitioner as it relates to default by the deceased? More particularly, is there a difference in this regard between the checking plus account and the installment loan? (2) Were the terms of the agreement on the certificate of insurance as to the stopping of credit life insurance exclusive ones or did default on the part of deceased give petitioner the right to stop as implied by law? (3) Is there a distinction between these insurance policies, given the fact that one was to be paid for while the other was free? (4) What is the effect of the statements of account dated January 22 and February 22, 1974 showing a zero balance owed in the checking plus account?
This court holds that the claim on the installment payment note shall be allowed, while the claim on the "checking plus” account shall not.
As evidenced by the installment payment note agreement, deceased was to pay $15.92 for the credit life insurance. Payment of these moneys, like repayment of the installment loan was to be financed for the duration of the loan. In order *423 for the deceased to receive this benefit, it was required that she continue to keep up her payments on this insurance. Therefore, these were dependent covenants, continuation of insurance coverage to be contingent upon deceased’s paying for this coverage. When deceased stopped payments, the bank was entitled to cancel the insurance. Although written notice to deceased would seem to be an equitable thing to do, this notice is not required here. This is not a premium finance agreement as defined in sections 554 to 578 of the Banking Law. Since petitioner properly canceled the insurance, it was not in effect at the date of decedent’s death. Therefore, this debt owed by deceased, is a valid claim against the estate. Such determination, by its effect, recognizes that the conditions for termination written upon the certificate of insurance are not exclusive. The deceased should have reasonably expected that this insurance would not remain in effect after she ceased to make payments on the loan and on the insurance.
With regard to the checking plus account, this court holds that such claim for unpaid moneys is not a valid one. Firstly, the insurance on this account was to be free of charge. There was no obligation on the part of the deceased to make payments in order to continue to keep this insurance in force. Therefore, it cannot be said that the covenant to keep this insurance in force was dependent upon deceased’s covenants to repay this checking plus loan. Even more relevant are the bank statements sent to decedent. The statement of account dated December 21, 1973 shows a balance due of $1,102.91. The statements of account dated January 22 and February 22, 1974, however, show a balance of "0”. Furthermore, the account shows a checking plus credit available of $1,000. The bank now claims that this was a mistake; that this amount had merely been charged off as a bad debt.
In Samson v Freedman (102 NY 699, 701) the court held: "An account thus stated is not conclusive upon either party, but is simply prima facie, presumptively correct and may be impeached for any error included by fraud or mistake.”
The court is of the opinion that the facts on the record fall short of the clear, convincing and satisfactory evidence essential to establish this claim which was never asserted during the lifetime of the decedent. As was stated sometime ago in Matter of Long (144 Misc 181, 187-188): "Public policy demands that the estates of deceased persons shall not be raided by persons claiming that which they have never asserted in *424 any manner during the lifetime of the deceased and suspicion justly attaches to claims extending over a long period of time and which remain unasserted until after the death of the person who is alleged to have incurred the obligation. (Matter of Doubleday, 173 App. Div. 739; affd., 220 N. Y. 590.)”
Van Slooten v Wheeler (140 NY 624, 633) states: "Public policy requires that claims against the estates of the dead should be established by very satisfactory evidence, and the courts should see to it that such estates are fairly protected against unfound and rapacious raids.”
In addition Maisenhelder v Crispell (105 App Div 219, 220) provides as follows: "The claim of the plaintiff was never presented to the deceased in his lifetime. This fact alone casts suspicion upon the validity of the claim, and the court cannot sanction its payment, except upon satisfactory proof of its validity. (Kearney v. McKeon, 85 N. Y. 136, 141.)”
Based upon the evidence adduced herein there is insufficient proof that a mistake was in fact made. Absent sufficient evidence that there was a mistake made by the bank in preparing this statement, the court must accept the statements of account as they appear on their face.
Because this debt was apparently paid off, this court must disallow this claim.